UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHRIS CACACE and CULINARY EDGE
CREATIONS, LLC.,

                  Plaintiffs,

          -against-

MEYER MARKETING (MACAU
COMMERCIAL OFFSHORE) CO., LTD.
and MEYER CORPORATION, U.S.,

                  Defendants.
-------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

06 Civ. 2938 (KMK) (GAY)

       This action arises out of defendants' alleged infringement of a patent of which

plaintiff Chris Cacace claims ownership and to which plaintiff Culinary Edge Creations,

LLC ("CEC") claims exploitation rights.  Presently before this Court is plaintiffs' motion

for sanctions, including attorneys' fees and costs, premised upon defendants' alleged

spoliation of evidence.  For the reasons that follow, plaintiffs' motion is denied.

## I.  BACKGROUND[1]

       In December 2002, U.S. Patent No. 6,497,174 ("the patent") issued to plaintiff

Chris Cacace for a novel frying pan design that makes the flipping and tossing of foods

easier and less messy for novice home cooks ("plaintiffs' flip pan").  In January 2004, at

the suggestion of the television shopping network QVC, plaintiff CEC contacted

defendant Meyer U.S. to explore a possible business relationship wherein Meyer U.S.

would manufacture and distribute plaintiffs' flip pan.  CEC sent Meyer U.S. a sample of

---

[1] Background information was gleaned from the parties' briefs and exhibits submitted in
conjunction with the instant motion, and from the parties' statements of undisputed
material facts submitted in conjunction with their previous cross-motions for summary
judgment (as summarized in Judge Karas's Opinion and Order dated December 2,
2008).

plaintiffs' flip pan; Meyer U.S. immediately returned the pan and informed CEC that a Meyer U.S. affiliate already had a similar design concept in development.  In February 2004, in light of its new awareness of plaintiffs' patent, Meyer U.S. sought the advice of its patent attorney concerning whether its design practiced Mr. Cacace's patent. Meyer's patent counsel issued a written opinion in which he concluded that it did not.

In May 2004, the parties began substantive discussions regarding the business terms of a potential licensing agreement pursuant to which defendant would manufacture plaintiffs' flip pan for QVC.  In the course of negotiations, the parties discussed defendants' desire to sell their own pan royalty-free.  CEC requested drawings that showed the details of the Meyer design, which Meyer U.S. provided. Upon receipt of the drawing, plaintiffs expressed concern that the Meyer design infringed on the patent.  Meyer U.S. responded that its design did not infringe and, accordingly, insisted that it would not pay royalties for pans based on its own design. CEC then requested a sample of the pan for which Meyer U.S. sought a release.  On or about September 22, 2004, CEC received a sample of defendants' pan.

On or about October 28, 2004, the parties entered into a licensing agreement pursuant to which defendants would make, advertise and sell products based upon plaintiffs' patent in exchange for a royalty of one dollar per pan sold based on the patent.  Under the terms of the licensing agreement, defendants could sell the "Licensee's Pan" royalty-free, provided that "Licensee's Pan" bore a specific legend. The licensing agreement also provided that neither the manufacture, sale or advertisement of the "Licensee's Pan" constituted infringement of the patent.

2

During the term of the licensing agreement, Meyer Macau manufactured and sold pans based on the patented design to QVC and paid royalties to CEC.  Also during the term of the licensing agreement, two of defendants' affiliates produced and sold pans based upon the Meyer design under the Circulon and Farberware brands.  Defendants paid no royalties to plaintiffs on the Circulon and Farberware pans.  In November 2005, defendants declined to renew the licensing agreement, which expired on December 31, 2005.  On or about March 21, 2006, plaintiffs notified defendants that the Circulon and Farberware pans did not fall within the definition and scope of "Licensee's Pan" and, therefore, were not excluded from the royalty and infringement provisions of the licensing agreement.  Defendants denied infringement and maintained that the Circulon and Farberware pans fell within the carve-out provision.  On or about April 14, 2006, plaintiffs commenced the instant action.

## II.  LEGAL STANDARD FOR SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007) (quotation and citation omitted).  A party moving for sanctions for spoliation of evidence carries the burden to prove: 1) that the spoliating party had control over the evidence in question and a duty to preserve it at the time it was destroyed, lost, or significantly altered; 2) that said evidence was destroyed, lost, or significantly altered with a culpable state of mind; and 3) that said evidence was relevant to the moving party's claims or defenses.  See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., 685 F. Supp.2d 456, 467 (S.D.N.Y. 2010).

3

### III.  DUTY TO PRESERVE

A.  <u>When Did Defendants' Duty Arise?</u>

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 436 (2d Cir.2001).  Thus, the preservation requirement arises when a party "reasonably anticipates litigation." <u>See</u> <u>Pension Comm.</u>, 685 F. Supp.2d at 466. After obtaining notice of the litigation, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." <u>See id.</u> (quotation and citation omitted).

Here, plaintiffs allege that defendants' duty to preserve arose in February 2004, when they learned of the patent and sought the opinion of their patent counsel. Plaintiffs point to defendants' own privilege log, which reflects documents produced in anticipation of litigation as early as February 25, 2004.  Defendants respond that, although they anticipated litigation at that time, their concerns were abated once the parties entered into their licensing agreement.  Thus, defendants argue that their obligation to preserve documents terminated on October 18, 2004 and did not attach again until April 2006 when they were served with the instant lawsuit.

In the Court's view, once defendants learned of the existence of the patent, they contacted their patent attorney in an effort to forestall litigation.  Thereafter, in the course of the parties' business negotiations, plaintiffs expressed concern that the Meyer design infringed on the patent.  Meyer U.S. responded that its design did not infringe and, accordingly, insisted that it would not pay royalties for pans based on its own

4

design.  Negotiations continued nonetheless and, ultimately, the parties reached a licensing agreement which excluded "Licensee's Pan" from its royalty and infringement provisions.  It was, therefore, entirely reasonable for defendants to believe that any lingering concern regarding potential infringement was addressed by, and resolved within, the licensing agreement.  Indeed, it is hard to imagine that defendants would have moved forward with the business arrangement had they believed litigation was forthcoming.  Consequently, defendants were no longer obligated to preserve relevant evidence after October 18, 2004.  The defendants' duty to preserve evidence arose again on March 21, 2006, when plaintiffs' counsel warned defendants of infringement. A closer inspection of the defendants' privilege log indicates that they interpreted the dissolution and reinstatement of their duties to preserve evidence in precisely this manner, as no items are listed as having been prepared in anticipation of litigation between the date the licensing agreement was signed and the date defendants received the notice of alleged infringement.

   B. Defendants' Efforts After March 21, 2006

   Plaintiffs claim that spoliation occurred after March 21, 2006 as a result of defendants' "recklessly deficient" efforts to collect and maintain relevant documents and correspondence.  Defendants counter that they placed a company-wide litigation hold on all records and correspondence relevant to the plaintiff's claim and conducted a company-wide search for relevant documents as soon as they received the plaintiffs' complaint.  Defendants' counsel followed up on this search by reviewing and preserving its results and by contacting all other identifiable potential custodians of relevant records that were employed by the defendants to inform them of their responsibilities to

5

preserve evidence and request that they conduct independent searches of their files for relevant documents.  Defendants thus contend that they fulfilled their duty to preserve potentially relevant documents.  Plaintiffs, however, point to several specific alleged deficiencies in support of their argument that defendants did not take necessary steps to preserve documents after the commencement of litigation in April 2006.

### 1.  Homer Cheung documents

Homer Cheung works for Meyer Services Company Limited, a Hong Kong-based affiliate of the defendant companies.  Mr. Cheung was one of the two designers of the Accused Products.  Plaintiffs allege that defendants never preserved or collected Mr. Cheung's documents; defendants contend that they had no control over the evidence in question and, thus, no duty to preserve.

"'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand.  This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation." Securities and Exchange Comm'n v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000) (internal citations omitted).  To this end, a corporate party is not obligated to obtain discovery materials from employees of a non-party affiliate company unless said affiliate is an alter-ego of the litigating entity, or where the "litigating corporation has acted with its sister in effecting the transaction giving rise to the lawsuit and is litigating on its sister's behalf." See PCI Parfums et Cosmetiques Int'l v. Perfumania, Inc., No. 93 Civ. 9009, 1998 WL 646635, at *2 (S.D.N.Y. 1998).  Plaintiffs have failed to establish that either situation applies here.  In any event, plaintiffs do not dispute that defendants have

6

produced all of Mr. Cheung's documents which were in their possession, custody or control.

### 2. *Alleged failure to communicate directly with key players*

Plaintiffs allege that defendant's counsel, Dean Krause, failed to speak directly with key players in the litigation and, instead, instructed their administrative assistants as to the appropriate procedures for complying with a litigation hold.  Contrary to the plaintiffs' claims, none of the key players testified at deposition that Mr. Krause failed to inform them of a pending litigation hold on documents relevant to this action.  Although some of them testified that they did not specifically *recall* that conversation, the consensus of all of the key player witnesses was that, as a general practice, they are directly notified by counsel wherever the need for a litigation hold arises.  Mr. Krause acknowledges that he worked more closely with many of the executives' administrative assistants to ensure that the necessary documents were collected and retained, but insists that this was appropriate since the assistants were deemed to be the direct custodians of said documents.  In sum, plaintiffs have not demonstrated that defendants failed to preserve and collect relevant documents from key players.

### 3. *Robert Rae's alleged disregard of document retention policy*

Plaintiffs contend that Robert Rae, President of defendant Meyer U.S., was not informed of the litigation hold and routinely discarded documents within three months of their creation, contrary to his company's document retention policy.  However, a review of the context of Mr. Rae's deposition testimony leads the Court to conclude that he was informed of the litigation hold and took reasonable and appropriate steps to comply therewith.  Furthermore, assuming that Mr. Rae's regular habit in the absence of a

litigation hold was to discard correspondence and documentation after three months, plaintiffs have failed to establish whether or how these actions led to the spoliation of any relevant evidence.

### 4. Documents produced on eve of depositions

Plaintiffs also complain that defendants withheld production of certain documents until after the close of discovery and shortly before the dates of depositions for which those documents were most relevant, and allege that this was indicative of "purposeful sluggishness."  Plaintiffs, however, do not address defendants' response that the documents in question did not exist before the close of discovery and were created for the sole purpose of assisting counsel with depositions.  More to the point, plaintiffs' contention is irrelevant to the instant motion because plaintiffs do not allege that said documents were destroyed, lost or significantly altered.

## IV.  CULPABLE MENTAL STATE

Defendants admit to a single instance in which documents that had been collected in connection with the lawsuit may have been lost.  Specifically, defendants admit that an archived folder containing emails relevant to the case was accidentally deleted from the email servers of Meyer U.S.  The issue, then, is whether defendants acted with sufficient culpability to warrant the imposition of sanctions.  See Fujitsu, 247 F.3d at 436.  In the Second Circuit, "a 'culpable state of mind' ranges from willful destruction in bad faith to simple negligence."  See Schwarz v. Fedex Kinko's Office, No. 08 Civ. 6486, 2009 WL 3459217, at *7 (S.D.N.Y. Oct. 27, 2009).

Defendants explain that the document folder at issue was inadvertently exposed to their system's automated periodic purge after it was designated as a "shared" folder

so that Mr. Krause's paralegal could access it to assist him in compiling their discovery responses.  Defendants immediately disclosed the nature of this incident to plaintiffs' counsel.  Contrary to plaintiffs' contention, the Court declines to conclude that the incident in question was a result of Mr. Krause's negligent failure to educate himself on the intricacies of the company's email system in contravention of his discovery obligations.  Furthermore, although Mr. Krause's description of the incident as a "server crash" was admittedly inartful, the Court does not consider this to have been a purposeful misrepresentation or indicative of bad faith.

## V.  RELEVANT EVIDENCE

Sanctions are not warranted merely because information is lost; the evidence must be shown to have been "relevant."  See Pension Comm., 685 F. Supp.2d at 467.  "When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance."  Zabulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y.2004).  However, "when the destruction is negligent, relevance must be proven by the party seeking sanctions."  Id.  "[R]elevant in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.  Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction."  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108–09 (2d Cir. 2002) (quotation marks, citations, and alterations omitted).

Here, plaintiffs have not identified any relevant documents that were lost, destroyed or significantly altered after defendants' duty to preserve arose in March

9

2006.  As to the contents of the deleted archived folder, defendants insist that any relevant, non-privileged emails in that folder had already been produced prior to their accidental deletion.  Plaintiffs also describe a marketing video (created and distributed by a third party company) that "may" be missing from defendants' production materials.  However, plaintiffs do not allege that said video was lost, destroyed or significantly altered; plaintiffs simply complain that defendants are able to acquire a copy and have not done so.  Plaintiffs' contention, therefore, relates only to a failure to produce and is not relevant to the instant spoliation motion.  In sum, plaintiffs fail to identify any relevant, discoverable evidence which defendants lost, destroyed or significantly altered after their duty to preserve arose.

## V.  CONCLUSION

For all the foregoing reasons, plaintiffs' motion for sanctions is **DENIED**.[2]

Dated:  May 12, 2011
        White Plains, New York

SO ORDERED:

GEORGE A. YANTHIS, U.S.M.J.

---

[2] Defendants' request for an award of attorneys' fees incurred in connection with their response to the instant motion is unwarranted under the circumstances and is also denied.