UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS CACACE and CULINARY EDGE CREATIONS, LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　-v-<br><br>MEYER MARKETING (MACAU COMMERCIAL OFFSHORE) CO., LTD. and MEYER CORPORATION, U.S.,<br><br>　　　　　　　　　　Defendants. | Case No. 06-CV-2938 (KMK)<br><br>OPINION AND ORDER |

Appearances:

Steven D. Chin, Esq.
Charlotte Ann Pontillo, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
New York, New York
*Counsel for Plaintiffs*

Joshua C. Krumholz, Esq.
Holland & Knight LLP
Boston, Massachusetts
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs Chris Cacace ("Cacace") and Culinary Edge Creations, LLC ("CEC")

(collectively, "Plaintiffs") bring this patent infringement action against Defendants Meyer

Corporation, U.S. ("Meyer U.S.") and its affiliate, Meyer Marketing (Macau Commercial

Offshore) Co., Ltd. ("Meyer Macau") (collectively, "Meyer" or "Defendants"), alleging that

Defendants have infringed a patent over which Cacace claims ownership and over which CEC

claims exploitation rights.  The Parties have sought an opinion from the Court to construct the

meaning of several claim terms in the patent.  What follows is the Court's construction of those

claims.  Defendants have also moved for summary judgment, asserting that Plaintiffs' patent is

invalid based on prior art that anticipates the patent's claims.  For the reasons stated herein, Defendants' motion is denied.

## I.  Background

### A.  Facts[1]

United States Patent No. 6,497,174 ("the '174 Patent"), entitled "Cooking Pan for Sautéing and Deglazing," was issued to Cacace on December 24, 2002.  (Pls.' Opening Claim Construction Br. ("Pls.' Opening Br.") 1.)  The '174 Patent is "generally directed to cookware designed to facilitate the mixing of food while cooking without utensils and with minimal spillage."  (*Id.*)  It discloses a pan design that allows users to mix the pan's contents by manipulating the pan's handle – specifically, the pan design causes the contents of the pan to be propelled upwards, above the cooking surface, then to be directed back into the pan onto the cooking surface.  (*Id.*)  Cacace licensed exploitation rights in the '174 Patent to CEC, a company of which he is the principal, including the right to enter into contracts for the manufacture, marketing and distribution of products based upon the '174 Patent.  *See Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 589 F. Supp. 2d 314, 316 (S.D.N.Y. 2008) (hereinafter "*Cacace I*").  CEC and Meyer executed a license agreement (the "License Agreement") on October 28, 2004, which allowed Meyer to manufacture and sell pans based on the '174 Patent (with a royalty of one dollar per pan sold based on the '174 Patent to be paid to CEC) and included a carve-out provision which allowed Meyer to manufacture and market its own pans (based on its own designs) separate and apart from the pans under the License Agreement, without infringing the '174 Patent.  *See id.* at 316-17.  Meyer thereafter manufactured and sold

---

[1] For an extensive recitation of the origins of this litigation, *see Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 589 F. Supp. 2d 314 (S.D.N.Y. 2008).

pans, under other brand names, and the Parties disputed whether these pans were covered under the License Agreement and, thus, whether royalties were to be paid to CEC on them. *See id.* at 317-18. Plaintiffs filed suit against Defendants in this Court, alleging two counts of patent infringement in violation of 35 U.S.C. § 271. *See id.* at 318. Defendants filed counterclaims, alleging non-infringement and invalidity of the '174 Patent, in addition to various tort claims. *See id.* Both Parties moved for summary judgment, and both motions were denied by this Court in *Cacace I*. (Dkt. No. 65.)

Meyer continues to assert that its pans do not infringe the '174 Patent, disputing Plaintiffs' constructions of several of the claim terms. (*See* Defs.' Opening Claim Construction Br. ("Defs.' Opening Br."); Defs.' Rebuttal Claim Construction Br. ("Defs.' Rebuttal").) The Parties' proposed claim constructions are discussed below. Additionally, Meyer has introduced prior art, a Japanese patent application, JP 9-234157 ("the '157 reference") to the Court, which it contends renders the '174 Patent invalid. (Pls.' Resp. to Defs.' Local Civil Rule 56.1 Statement of Material Facts and Pls.' Local Civil Rule 56.1 Statement of Additional Material Facts ("Pls.' 56.1") ¶ 3; Defs.' Local Civil Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶ 3.) The '157 reference was published on September 9, 1997, and discloses a cooking pan consisting of a base that forms a cooking surface that is bounded by a side wall. (Pls.' 56.1 ¶¶ 4-6; Defs.' 56.1 ¶¶ 4-6.) The side wall has an inside surface which is a line having a curve, including at the top edge of the side wall opposite the handle. (Pls.' 56.1 ¶ 13; Defs.' 56.1 ¶ 13; Decl. of Peter I. Sanborn in Supp. of Defs.' Mot. for Summ. J. of Invalidity of U.S. Patent No. 6,497,174 ("Sanborn Decl.") Ex. 3, at MM0000134.) The '157 reference further "depicts and describes a cooking pan where the lower portion of the side wall opposite the handle has a curvilinear

3

profile,[2] so that food pieces that are propelled upward near that side wall when the handle is

pulled backward, are directed toward the inside surface of the lower portion of the opposite side

wall."[3]  (Defs.' 56.1 ¶ 16.)  These features are similar to those disclosed in the '174 Patent.  (*See*

Parties' J.A. of Intrinsic and Extrinsic Evidence for Claim Construction ("J.A.") 1-9.)

Defendants included several visual comparisons between the pans disclosed by the '174 Patent

and the '157 reference, including numerous angle measurements which were calculated using a

computer program.  (Defs.' 56.1 ¶¶ 28-39.)  However, Plaintiffs assert that these depictions, and

the angle measurements included within them, should not be relied upon, arguing that

Defendants did not provide any factual support for their accuracy, and that there are ambiguities

in some of the measurements relied upon by Defendants.[4]  (Pls.' 56.1 ¶¶ 28-39.)  Further,

Plaintiffs argue that there is at least one claim limitation in the '174 Patent that is not disclosed

by the '157 reference and, therefore, that the '157 reference does not anticipate the '174 Patent

or render it invalid.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Mem.") 2.)

---

[2] The Parties dispute the meaning which should be ascribed to the term "curvilinear profile."  This term will be discussed in the claim construction section of this Opinion.

[3] Although Plaintiffs contend that the diagrams associated with the '157 reference depict a pan with a side wall opposite the handle that has both flat and curved regions, the language in the '157 reference leads to a different conclusion.  For example, the abstract specifically states that the upper part of the side wall is "curved backward," and the description states that "by placing an inversion part that curves backward towards the handle on the top part of the side face that is on the side of the pan body opposite the handle, [the same area described in the abstract,] the ingredients are naturally turned over backward."  (Sanborn Decl. Ex. 4, at MM0000538, MM0000540.)  Therefore, contrary to Plaintiffs' assertions, it appears that the side wall is curved along the entirety of its surface.

[4] One such ambiguity highlighted by Plaintiffs in their Rule 56.1 Counterstatement – that it is unclear which element of the '157 reference actually constitutes the cooking surface from which to measure the angles – is not actually ambiguous.  Plaintiffs concede as much in their Letter of August 26, 2010 to defense counsel (Sanborn Decl. Ex. 7, at 2), noting that the diagrams in the '157 reference make clear that it is element 11a, and not element 11, that constitutes the cooking surface from which the angle measurements should be made.

B.  Procedural History

Plaintiffs filed the Complaint on April 14, 2006.  (Dkt. No. 1.)  The Parties initially filed cross-motions for summary judgment (Dkt. Nos. 27, 38), which were both denied by the Court in *Cacace I*, (Dkt. No. 65).  On March 12, 2010, the Parties filed claim construction statements for the disputed claim ("Claim 1") of the '174 Patent (Dkt. Nos. 72, 73), and on April 2, 2010, the Parties filed responses to each other's construction statements, (Dkt Nos. 78, 80).  A *Markman* hearing was held on February 16, 2011.  On December 16, 2010, Defendants moved for summary judgment based on invalidity of the '174 Patent.  (Dkt. No. 103.)  Oral argument on this motion also was heard by the Court on February 16, 2011.

## II.  Discussion

A.  Claim Construction

1.  Standard of Review

"Victory in an infringement suit requires a finding that the patent claim covers the alleged infringer's product or process, which in turn necessitates a determination of what the words in the claim mean."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) (internal quotation omitted).  In *Markman*, the Supreme Court held that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Id.* at 372.  The purpose of claim construction "is neither to limit nor to broaden the claims, but to define, as a matter of law, the invention that has been patented."  *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

The importance of intrinsic evidence in patent construction claims has been well established:

> It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal citation omitted); *accord Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics Corp.*, 90 F.3d at 1583. In fact, where the intrinsic evidence is sufficient to resolve ambiguities, "it is improper to rely on extrinsic evidence" to construe a claim. *Id.*

"All intrinsic evidence [of a claim] is not equal." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The first source of a claim is the claim language itself, because "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (internal quotations omitted); *accord Vitronics Corp.*, 90 F.3d at 1582 ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."). During claim construction, a disputed term is typically given its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotation omitted). However, "a patentee may choose to be his [or her] own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp.*, 90 F.3d at 1582. After the claim's language, the court should then consider the rest of the intrinsic evidence, beginning with the specification and finishing with the prosecution history. *See id.* "This history contains the complete record of all

6

the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.* In this regard, claims must be construed in the context of the entire patent, including the specification, which "is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted). "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics Corp.*, 90 F.3d at 1582. Limitations from the specification, however, should not be read into the claims. *See Phillips*, 415 F.3d at 1323-24; *Interactive Gift Express*, 256 F.3d at 1331 ("[I]n looking to the specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification into the claims." (alterations and internal quotation marks omitted)).

If a patent's intrinsic evidence does not clarify the meaning of a disputed claim term, only then may a court can consider extrinsic evidence, which includes, but is not limited to, expert and inventor testimony, dictionary definitions, and learned treatises. *See Vitronics Corp.*, 90 F.3d at 1584; *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) (noting that courts can consider extrinsic evidence "if needed"). The court is not "barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Phillips*, 415 F.3d at 1324.

> [B]ecause extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.

*Id.* at 1319.  However, a court should be mindful that extrinsic evidence is "in general . . . less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id*. at 1318 (describing the court's "considerable task of filtering the useful extrinsic evidence from the fluff").  Finally, claims should be interpreted so that they are consistent with the "fundamental purpose and significance of the invention, and in a manner consistent with and furthering the purpose of the invention."  *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp. 2d 362, 375 (S.D.N.Y. 2000) (alteration, citation, and internal quotation marks omitted), *aff'd*, 237 F.3d 1359, 1364 (Fed. Cir. 2001).

### 2.  Analysis

The Parties dispute the proper construction of five terms in Claim 1 of the '174 patent. The Court will discuss each in turn.

### a.  "Curvilinear Profile"

The '174 Patent consists of 10 claims, including independent Claim 1.  Claim 1 sets forth, in part, a "side wall [which] has an inside surface having a curvilinear profile in a plane that is normal to the cooking surface." '174 Patent col. 10, ll. 63-65.[5]  The Parties dispute the meaning of the term "curvilinear profile."  Plaintiffs contend that "curvilinear profile" means "[a] line having a curve," while Defendants counter that the term, as used in the patent, means "[r]epresented by a smooth, curved line."  (Pls.' Opening Br. 7.)  Essentially, the dispute is over whether a curvilinear profile may include flat, uncurved regions, or whether it must be curved along the entirety of its length.  (*Id.*)[6]

---

[5] The Parties agreed at oral argument that normal means perpendicular.  (Oral Arg. Tr. ("Tr.") 44:20-23.)

[6] The Court "ha[s] the authority to adopt claim constructions which have not been proposed by either [P]arty." *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006)

The Court accepts Defendants' construction of this claim term and finds that the plain language of the claim implies that the inside surface of the side wall is curved along its entire length.[7]  Despite Plaintiffs' contentions, the plain language does not appear to contemplate a line that is curved in some areas and is otherwise straight.  Rather, curvilinear profile means simply that: a profile that is curved, not straight or flat.  This interpretation of the plain language of the claim is supported by the specification, sections upon which both Parties rely.  Plaintiffs state that Figure 2 of the specification "demonstrates that the 'curvilinear' side wall of the pan in fact includes portions that are plainly not curved."  (Pls.' Opening Br. 8.)  The Court, however, is unconvinced by this assertion.  It is not at all clear that there are plainly uncurved portions of the pan's side wall.  Notably, and as Defendants point out, overly-magnified images of any curve can make it appear as though sections of that curve are flat.  (Defs.' Rebuttal Br. 2.) Additionally, slowly-curving surfaces may in fact appear flat in some regions, rendering any naked eye observations potentially unreliable.  Indeed, although Plaintiffs attempt to demonstrate through these visual images that the portion of the side wall near the top edge of the pan is straight (Pls.' Rebuttal Claim Construction Br. ("Pls.' Rebuttal Br.") 4), this point is belied by the specification's explanation that "the upper portion 24 of the side wall has a curvilinear inside

_____

(citing *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1556 (Fed. Cir. 1995)); *see also Exxon Chem.*, 64 F.3d at 1556 (noting that "the judge's task is not to decide which of the adversaries is correct[;] [i]nstead, the judge must independently assess the claims, the specification, and if necessary the prosecution history, and relevant extrinsic evidence, and declare the meaning of the claims").

[7] At oral argument, Defendants' counsel conceded that the word "smooth" may not properly be included in a construction of this claim term, because the word "smooth" does not appear anywhere in the claim language, but rather is mentioned only in the specification, as discussed below.  Therefore, the Court's construction of the term "curvilinear profile" does not incorporate the word "smooth."  This does not, however, affect the Court's conclusion that "curvilinear profile," as that term is used in this patent, requires curvature along the entire length of the side wall.

surface 26 that extends upward and radially inward of the pan," clearly describing the top part of the pan as curving inward toward the handle.[8]  '174 Patent col. 3, ll. 33-35.  Therefore, Plaintiffs' reliance on Figure 2 of the specification for this point is unavailing.

Defendants, on the other hand, point to language in the specification describing "a lower portion 18 of the side wall next to the cooking surface [that] rises smoothly upward and away from the cooking surface boundary."  (Defs.' Opening Br. 10 (quoting '174 Patent col. 2, l. 66-col. 3, l.1).)  Defendants further point out that the patent figures are described as being "configured according to the invention," and that the description of this "smooth" portion of the side wall is part of a "detailed description of the invention," thus limiting the claims to that particular embodiment.  (*Id.*)  *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1366 (Fed. Cir. 2010) ("'[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.'" (quoting *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005))).  Plaintiffs, however, counter that the claims may not be limited only to disclosed embodiments absent a clear limiting disclaimer in the intrinsic record.  (Pls.' Rebuttal Br. 4 n.3 (citing *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 82 F. App'x 691, 694 (Fed. Cir. 2003) ("[A] construing court may not limit the claims to the disclosed embodiments without a clear disclaimer in the intrinsic record that limits the invention to these embodiments and nothing more.")).)  *See also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the

---

[8] The existence of "Angle A," formed by the line tangent to the curvilinear profile substantially at the "fourth point" (which is a location on the top edge of the side wall) and a line normal to the cooking surface, further supports the fact that the inside surface of the side wall is curved near the top edge of the pan.  Angle A is discussed in more detail below.

patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." (internal quotation marks omitted)).

Even if the Court were to accept Plaintiffs' position that the disclosed embodiments are not the only intended embodiment of the invention, it still finds that Defendants' construction of this claim limitation should prevail.  The term "curvilinear profile" means a profile marked by its curvature.  Plaintiffs' only argument against this interpretation is that the side wall in Figure 2 appears to have portions that are not curved.   As noted above, this argument is at best misguided, if not factually incorrect.  There is nothing in the intrinsic record that would suggest otherwise, i.e., that Plaintiffs contemplated an embodiment including a side wall featuring a "curvilinear profile," with that side wall having a point at which the "curvilinear profile" stops curving and becomes flat.  This finding is bolstered by the fact that, according to the specification, the lower portion of the side wall is curved (which Plaintiffs do not dispute), as well as the fact that the top portion of the side wall is curved (discussed above, and also below in the "Tangent" section), despite Plaintiffs' protestations to the contrary.  If the inside surface of a side wall with a "curvilinear profile" features curves at both of its ends, the Court finds that the inside surface constantly curves in-between.  Therefore, the Court construes the term "curvilinear profile" as referring to a side wall that is curved along the entirety of its length.[9]

---

[9] The Court will not rely on the prosecution history to construct this term because the term was not the subject of any amendments before the United States Patent and Trademark Office ("PTO").  (Pls.' Rebuttal Br. 5-7.)  However, it should be noted that the prosecution history and the dictionary definitions of the term are not inconsistent with Defendants' construction.  After the initial rejection of his patent application, Cacace filed an "Amendment" (J.A. 53-61), in order to distinguish his invention from U.S. Patent No. 6,237,470 (the "Adams prior art"), which disclosed a side wall with a substantially flat region.  Unlike the original patent claims, the claims in Cacace's Amendment described the pan's side wall as having "an inside surface having a curvilinear profile in a plane that is normal to the cooking surface."  (J.A. 54.)  It is possible, therefore, to interpret the inclusion of the term "curvilinear profile" in the Amendment as intended to distinguish the side walls disclosed in Cacace's invention from the

b.  "Tangent"

Claim 1 of the '174 Patent discloses a pan comprising "a line drawn tangent to said curvilinear profile substantially at [the] fourth point."  '174 Patent col. 11, ll. 15-16.  Plaintiffs' proposed construction of the term "tangent" is "[m]aking contact at a single point or along a line," while Defendants propose that "tangent" means "[m]eeting a curve at only one point." (Pls.' Opening Br. 16; Defs.' Opening Br. 13.)  Plaintiffs again rely on Figure 2 of the specification to support their argument, asserting that the side wall near the top edge appears to be straight, not curved, and that the tangent line therefore appears to be in contact with the side wall at more than one point, making Defendants' proposed construction too restrictive.  (Pls.' Opening Br. 17.)  However, as noted in the Court's discussion of the term "curvilinear profile," Plaintiffs' reliance on these visual images is improper in this instance and cannot be accepted as conclusive evidence either that the pan is straight at this location of the side wall (indeed, the Court finds that it is not) or that a tangent line in fact intersects the curvilinear profile of the side wall at more than one point.[10]  Assuming that the inside surface of the side wall is curved at this location, a line tangent to the inside surface's curvilinear profile "substantially at [the] fourth point" would intersect the surface in only one location.  Indeed, the fact that the claim language

---

flat side walls disclosed in the Adams prior art.  Further, as Defendants note, the construction of the term "curvilinear profile" that Defendants advocate, and which the Court adopts, is consistent with several dictionary definitions of the word "curvilinear."  (Defs.' Opening Br. 11-12; *see also* J.A. 80 (defining "curvilinear" as "[p]ertaining to curved lines," from McGraw-Hill Dictionary of Scientific and Technical Terms (2003)); J.A. 81 (defining "curvilinear" as "represented by a curved line," from Merriam-Webster's Collegiate Dictionary (2004)); J.A. 82 (defining "curvilinear" as "[d]eviating from a straight line," from Roget's II The New Thesaurus (2003)).)

[10] Again, the Court notes that drawing definitive conclusions – especially regarding mathematical concepts such as intersection points of tangent lines, which require a high degree of precision – based on these imprecise images, is problematic.

refers to a specific point at or near which the tangent line must be drawn further supports Defendants' proposed construction of the term "tangent" as meeting a curve at only one point. Taken together, then, the intrinsic record supports the adoption of Defendants' proposed construction, notwithstanding the existence of a dictionary definition of "tangent" as "[m]aking contact at a single point or along a line . . . ," which contemplates Plaintiffs' proposed construction. (J.A. 87 (citing The American Heritage College Dictionary 1385 (3d ed. 1993)).) *See Phillips*, 415 F.3d at 1322-23 (holding that extrinsic evidence, such as dictionary definitions, may be considered when construing claim terms, unless those definitions "contradict any definition found in or ascertained by a reading of the patent documents"). The weight of the intrinsic evidence is consistent with the conclusion that Plaintiffs intended to apply the plain, more commonly understood definition of "tangent," which is "[a] straight line that touches a curve at only one point." (J.A. 84 (citing The Macmillan Encyclopedia (2003)).) Therefore, the Court adopts Defendants' construction of this term.

### c.   "Second and Third Points"

Claim 1 of the '174 Patent discloses "an upper portion of [a] side wall [which] has a top edge that rises upward from the cooking surface from second and third points on the top edge, to a fourth point on the top edge." '174 Patent col. 11, ll. 10-12. Plaintiffs' proposed construction of this claim is as follows: "The top edge of the side wall rises from two locations along the top edge of the side wall, one on each side of the first point and between the first and fourth points, to a location on the top edge of the side wall, opposite the handle." (Pls.' Opening Br. 12.) Defendants do not offer their own proposed construction for this element of claim 1, but rather argue that Plaintiffs' proposed construction is over-inclusive, as it allows for an infinite number of pairs of locations (i.e., second and third points) along the top edge that rise upward to a fourth

13

point on the top edge, which is impermissible given the specificity of the claim language.

(Defs.' Opening Br. 15-17.)

Plaintiffs argue that the claim language and the specification support their proposed

claim construction.  Their construction does, in fact, track the claim language closely.  Further,

Figure 1 of the specification clearly portrays the "two locations along the top edge of the side

wall," points P2 and P3, from which the top edge rises to the fourth point, P4, near the top of the

side wall.  (Pls.' Opening Br. 13.)  Plaintiffs further demonstrate that there are other pairs of

points – for example, points P2a and P3a – from which the top edge also rises to the fourth point.

(*Id.* at 14.)  Defendants, however, assert that this construction essentially reads out the claim

language, which specifically refers to "first," "second," "third," and "fourth" points.[11]  (Defs.'

Opening Br. 15.)  Additionally, Defendants point out that Figure 1 of the specification includes

two points (and only two points), P2 and P3, from which the top edge rises to the fourth point.

Thus, they argue that any construction of this claim limitation must explicitly restrict the pan to

featuring only these two points.  (*Id.* at 16.)  The Court finds that Defendants' assertions have

some merit, and that Plaintiffs' proposed construction should refer more specifically to the

points as they are described in the claim limitation.  A wholesale adoption of Defendants' view,

however, would lead to an absurd result for the following reasons.

The second and third points described in Claim 1 are the *first points* at which the top

edge begins to rise.  However, if one were to start from these points and trace a path along the

---

[11] Defendants also argue that the prosecution history, wherein Plaintiffs amended the claims in order to overcome the Adams prior art, demonstrates that the claims specifically disclose a top edge rising to a fourth point from only one pair of points, where the slope of the top edge changes, and not multiple pairs of points.  However, as Plaintiffs point out, there is no support in the record for this contention, and there is no discussion of "slope" anywhere in the patent or the prosecution history.  (Pls.' Rebuttal Br. 14-15.)

side wall up to the fourth point, one would inevitably pass other pairs of points (e.g., points P2a and P3a, P2b and P3b, and so on) from which the top edge *also* rises to a fourth point, because once the side wall begins to rise at points P2 and P3, it does not stop rising.  In other words, between points P2 and P3 and the fourth point, P4, there are an infinite number of points from which the side wall rises, because of the very nature of the claimed invention.  The claim language refers merely to the first two points from which the top edge begins to rise.  Therefore, the Court finds that a proper construction of this claim is: the top edge of the side wall *begins to rise* from two locations along the top edge of the side wall, one on each side of the first point and between the first and fourth points, to a location on the top edge of the side wall, opposite the handle.[12]  Such a construction refers only to the two points – P2 and P3 – from which the top

--------------------------------------------

[12] This construction also finds support in the claim language and the specification.  At oral argument, Plaintiffs' counsel stated that nothing in Claim 1 requires the top edge of the side wall to be at a uniform height between the first point, P1, and P2 and P3.  (Tr. 29:19-30:6.)  Indeed, Plaintiffs' counsel is correct that this "uniform height" limitation is contained in Claim 2, and not Claim 1.  However, Claim 1 would be rendered meaningless if it did not require the top edge of the side wall to have a uniform height between P1 and P2/P3 because if it did not, then the claim language could potentially cover a pan that constantly rises from P1 to P4, which would completely read out P2 and P3, and "claims [should be] interpreted with an eye toward giving effect to all terms in the claim."  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).  The specification contains a visual depiction of a pan with a uniform first height between P1 and P2/P3, and it contains a detailed description of the relationship between the uniform first height, "H," of the pan between P1 and P2/P3, and the height of the pan at P4, "R," with "R" being about 1.75 times greater than "H" in the preferred embodiment.  '174 Patent col. 3, ll. 7-21.  In instances "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."  *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (citing cases).  Reading the claim language in light of the specification, and attempting to give effect to all of the claim terms, the Court is persuaded that Claim 1 includes a uniform height limitation and excludes a pan with a top edge of a side wall that rises all the way from P1 to P4.  Such an interpretation ensures that all of the claim terms have some meaning.  Claim 2, which specifies that the pan's height at the fourth point should be about 1.75 times the uniform height between P1 and P2/P3, would not be rendered superfluous by such a reading.

edge of the side wall begins to rise, and does not include the infinite number of points along the

top edge of the side wall, between P2/P3 and P4, that also rise toward P4, thus addressing the

heart of Defendants' concerns about the construction of this claim limitation.  Accordingly, this

is the construction that will be adopted by the Court.

### d.  "Substantially at Said Fourth Point"

The '174 Patent discloses "a line drawn tangent to said curvilinear profile substantially at

said fourth point."  '174 Patent col. 11, ll. 15-16.  Plaintiffs' proposed construction for the term

"substantially at said fourth point" is "[i]n the vicinity of the fourth point."  (Pls.' Opening Br.

15.)  Defendants, however, argue that the term "substantially at said fourth point" is indefinite

under 35 U.S.C. § 112, ¶ 2 (*id.*), which requires that "[t]he specification . . . conclude with one or

more claims particularly pointing out and distinctly claiming the subject matter which the

applicant regards as his [or her] invention."[13]  "[T]he standard for assessing whether a patent

claim is sufficiently definite to satisfy th[is] statutory requirement [is] as follows: If one skilled

in the art would understand the bounds of the claim when read in light of the specification, then

the claim satisfies section 112 paragraph 2."  *Exxon Research & Eng'g Co. v. United States*, 265

F.3d 1371, 1375 (Fed. Cir. 2001).

The Federal Circuit has held that a claim should be held indefinite where it is "insolubly

ambiguous"; however, "claims are not indefinite merely because they present a difficult task of

claim construction.  Instead, if the meaning of the claim is discernible, even though the task may

be formidable and the conclusion may be one over which reasonable persons will disagree, [the

---

[13] Pursuant to Federal Circuit caselaw, the Court will apply general principles of claim construction (i.e., relying primarily the intrinsic record) in analyzing the claim terms for indefiniteness.  *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) ("[I]n the face of an allegation of indefiniteness, general principles of claim construction apply.").

Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (alteration and internal quotation marks omitted).  The standard of proving indefiniteness "is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as [his or] her knowledge of the relevant art area."  *Id.* at 1249-50.

Defendants claim that the term in question "leave[s] open the question of exactly how close the tangent line should be drawn to the fourth point."  (Defs.' Opening Br. 19.)  They assert that this ambiguity in terminology, combined with a complete lack of guidance in the claim language, specification, and prosecution history, provides insufficient guidance to those skilled in the art to determine whether a product falls within the scope of the claims.  (*Id.* at 20-22.)  Defendants therefore believe that the term "substantially at said fourth point" is indefinite under 35 U.S.C. § 112, ¶ 2.  The Court does not agree.  As an initial matter, Figure 2 of the specification does in fact provide a standard which enables those skilled in the art to determine whether a tangent line has been drawn "substantially at said fourth point."  The locations of the fourth point, and the line tangent to the curvilinear profile of the inside surface of the side wall "substantially at said fourth point," are clear in the patent drawings, and thus provide a sufficient guide to anyone skilled in the art to determine the proper location of the tangent line.  In similar circumstances courts have upheld similar language in patent claims as not indefinite.  *See, e.g.*, *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348-49 (Fed. Cir. 2010) (affirming district court's ruling that the term "near" was not vague or subjective, especially where the specification illustrated the location of the element in question, thus "providing a standard for measuring the term"); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345-47 (Fed. Cir. 2007)

(overturning district court's determination that the term "near" was indefinite).  Finally,

Defendants offer nothing more than attorney argument to prove that those skilled in the art

would not be able to discern the meaning of "substantially at said fourth point," as that term is

used in the patent, and it is well-settled that "[m]ere attorney argument is no substitute for

evidence of record."  *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1362 (Fed. Cir. 2001);

*see also Hypoxico, Inc. v. Colo. Altitude Training, LLC*, No. 02-CV-6191, 2008 WL 4129269, at

*10 (S.D.N.Y. Sept. 4, 2008) (finding claim terms not indefinite where defendant "offer[ed] only

the conclusory statements of counsel in support of its argument that one skilled in the art would

not understand" the scope of the claim terms); *cf. Kinzenbaw v. Case, LLC*, No. 01-CV-133,

2005 WL 4827380, at *4-6 (N.D. Iowa Feb. 4, 2005) (holding that party which offered expert

testimony to demonstrate indefiniteness of claim term which disclosed, in part, a "vertical axis of

rotation of [a] lift frame [that] is substantially on a center line," failed to meet its burden of

proving indefiniteness by clear and convincing evidence).  Accordingly, the Court finds that

Defendants have failed to prove by clear and convincing evidence that the term "substantially at

said fourth point" is indefinite.

### e.  "Substantially Within the Forward Region"

The '174 Patent discloses a pan comprising an angle of between 2 and 10 degrees,

formed by a line drawn tangent to the curvilinear profile (discussed above) substantially at the

fourth point and a line that is normal to the cooking surface, "wherein the food pieces that are

propelled upward near the side wall opposite the handle when the handle is pulled backward, are

directed by the upper portion of the side wall to land substantially within the forward region of

[the] cooking surface."  '174 Patent col. 11, ll. 18-22.  Plaintiffs do not offer any proposed

construction for this limitation, arguing instead that one of ordinary skill in the art would

understand both the action that is required to propel the food, and the desired result.  (Pls.'
Opening Br. 20.)  Defendants argue that this claim limitation is indefinite under 35 U.S.C. § 112,
¶ 2.

The Court outlined the framework for analyzing claim terms for indefiniteness under 35
U.S.C. § 112, ¶ 2 above, in Section II.A.2.d.  Here, Defendants assert that the limitation is
indefinite on the grounds that "the specification fails to provide a test method or objective basis
for determining whether a product or process falls within the scope of the claim."  (Defs.'
Opening Br. 22.)  *See Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1340-41 (Fed.
Cir. 2003) (finding claim indefinite where the patent failed to provide guidance on the proper
test to apply to confirm the existence of the claim limitation, where several tests existed, each of
which produced different results).  Because, Defendants argue, it is unclear how to measure
whether food has landed "substantially within the forward region" of the cooking area, the
limitation is indefinite.

The Court rejects Defendants' arguments for several reasons.  First, as noted above,
terms of degree, such as "substantially," do not automatically render claim terms indefinite.  *See
Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821-22 (Fed. Cir. 1988) (noting that terms of
degree are acceptable in patent claims to the extent that they alert persons of ordinary skill in the
art to what is being claimed).  Second, despite Defendants' assertions to the contrary, the
specification does indeed provide sufficient guidance to a person of ordinary skill in the art to
understand the scope of the claim limitation.  Figure 2 of the specification clearly depicts the
"forward region" of the cooking surface, denoted as "28" in the drawing.  (J.A. 1.)  Therefore,
any argument that it is unclear where the food pieces are supposed to land (Defs.' Opening Br.
22), is without merit.  Further, as Plaintiffs note, the specification does indeed contain language

explaining the meaning of this particular claim limitation.  (Pls.' Rebuttal Br. 20-21.)  For

example, the specification explains that "[t]he lower portion . . . is formed so that when the pan

handle . . . is moved suddenly backward . . . pieces of food when placed on the food surface . . .

are urged against the lower portion . . . and propelled upward near the side wall," and that food

pieces so manipulated "are directed . . . to land within a forward region of the cooking surface

further from the handle of the pan, rather than outside the pan or near the handle."  (*Id.* (quoting

'174 Patent col. 2, ll. 30-34, col. 3, ll. 1-6).)  Therefore, the level of force necessary to be applied

is that which would "urge" the food pieces against the lower portion, an aspect of the claim

which reasonably would be understood by one of ordinary skill in the art.  The specification also

describes a series of tests performed on various types of foods in pans with side walls of varying

angle measures, and the results of those tests.  (*Id.* at 21; *see also* '174 Patent col. 3, l. 55-col. 10,

l. 9.)[14]  Thus, contrary to Defendants' assertions, Plaintiffs have addressed a number of the

variables that Defendants contend are not accounted for in the patent specification (Defs.'

Opening Br. 24), including the type and amount of food used and the speed with which the pan

must be pulled backward.[15]  Finally, Defendants rely exclusively upon attorney argument in

support of their contention that this claim limitation is indefinite, and as discussed above in

---

[14] Although Defendants attempt to argue that the claim limitation fails because the specification does not provide "a test method or objective basis for determining whether a product or process falls within the scope of the claim" (Defs.' Opening Br. 22), the tests described in the '174 Patent's specification indeed provide an objective basis for determining whether a pan performs in the manner claimed by the patent.  The cases cited by Defendants are distinguishable, because the patents in those cases failed to identify the criteria to be used in determining whether a product or process fell within the scope of the claims.  (Pls.' Rebuttal Br. 24-25.)  Here, on the other hand, the criteria, and the test for measuring them, are provided in the patent.

[15] Other variables listed by Defendants, such as the level of skill of the chef, are largely irrelevant to determining whether a cooking pan is configured so that food pieces will behave in the manner described in the patent.

Section II.A.2.d, mere attorney argument is insufficient to establish invalidity based on indefiniteness. *See McGinley*, 262 F.3d at 1362; *Hypoxico*, 2008 WL 4129269, at *10. Defendants, therefore, have not established by clear and convincing evidence that this claim limitation is indefinite. Therefore, the Court finds that this claim limitation is not indefinite under 35 U.S.C. § 112, ¶ 2.

### B. Summary Judgment

#### 1. Standard of Review

Summary judgment shall be granted where it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citations

omitted).  "When the moving party has carried its burden under Rule 56[(a)] , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").  "A fact is 'material' when it might affect the outcome of the suit under governing law."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial.  *See Westinghouse Electric Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990).  A court's goal should be "to isolate and dispose of factually unsupported claims."  *Celotex*, 477 U.S. at 323-24.

### 2.  Analysis

Patents are presumed to be valid, and this presumption may be overcome only through facts supported by clear and convincing evidence.  *See SRAM Corp. v. AD-II Eng'g*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citing 35 U.S.C. § 282 and *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997)); *see also Nextec Applications v. Brookwood Cos.*, 703 F. Supp. 2d 390, 420 (S.D.N.Y. 2010) (noting the same).  Therefore, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise."  *SRAM Corp.*, 465 F.3d at 1357; *see also Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) ("Summary judgment [of invalidity] is proper if no reasonable jury could find that the patent is not anticipated."); *Gen. Electric Corp. v. Nintendo Co.*, 179 F.3d 1350, 1353 (Fed. Cir.

22

1999) (noting that the question of invalidity may be decided on summary judgment if the record reveals no genuine dispute of material fact).

A party may show that a patent is invalid by demonstrating that it was anticipated by prior art. *See* 35 U.S.C. 102(b) ("A person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States."). A demonstration of anticipation "requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp.*, 522 F.3d at 1363. Therefore, in order to anticipate, "[a] prior art reference must disclose every limitation of the claimed invention," but such disclosure may be done "either explicitly or inherently." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). Prior art inherently discloses a claim limitation "'if the prior art necessarily functions in accordance with, or includes, the claimed limitations,'" and inherency is a question of fact for the Court. *Id.* (quoting *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999)) (analyzing district court's inherency finding).

Here, Defendants assert that the '157 reference contains all of the claim limitations of the '174 Patent, both explicitly and inherently, and thus anticipates its teachings and renders the patent invalid.[16] Defendants first note that the '157 reference "constitutes an enabling

---

[16] The '157 reference is a Japanese laid-open patent application. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") 5-6.) Japanese patent applications are "laid open," or published, eighteen months after they are filed. *See* Brian G. Strawn, *Guide to Japanese Intellectual Property Law*, 26 AIPLA Q. J. 55, 66 (1998). They are treated as printed publications under United States patent law. *See, e.g.*, *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151-52 (Fed. Cir. 2004) (considering Japanese laid-open patent application as prior art in analyzing patent invalidity claim); *Semiconductor Energy Lab. Co. v. Samsung Elec. Co.*, 204 F.3d 1368, 1372 (Fed. Cir. 2000) (noting that patentee had cited Japanese laid-open patent applications as "important prior art"). The '157 reference was filed in March 1996 and

23

disclosure" (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") 6), meaning that it is detailed enough to allow a person of ordinary skill in the art to practice the invention without undue experimentation. *See Sanofi-Synthelabo v. Apotex, Inc.*, 492 F. Supp. 2d 353, 382 (S.D.N.Y. 2007) (noting that a prior art reference "must be an enabling disclosure, rather than mere vague intimations of general ideas that may or may not be workable" (internal quotation marks omitted)), *aff'd*, 550 F.3d 1075 (Fed. Cir. 2008), *cert. denied*, 130 S. Ct. 493 (2009). Defendants then compare the features of the '157 reference to those in the '174 Patent.  (Defs.' Mem. 7-24.)  As noted above, Plaintiffs contest these comparisons in part to the extent that they believe there are ambiguities regarding which element of the '157 reference constitutes the cooking surface – an assertion that the Court finds is unsupportable, *see supra* note 4, – and to the extent that they believe that the '157 reference does not feature a side wall with a curvilinear profile, which the Court also finds is incorrect, *see supra* note 3.

Therefore, the Parties' primary remaining dispute – and the one the Court will focus on here – is whether Defendants' measurements of the angles in the '157 reference are admissible. If they are, then this would allow the Court to find that the '157 reference inherently discloses other of the claim limitations of the '174 Patent, possibly rendering the patent invalid as anticipated.  The '157 reference does not explicitly disclose any angle limitations.  However, Defendants have conducted their own measurements of the figures in the '157 reference, and argue that these measurements demonstrate that the angle between a line tangent to a point at the top edge of the forward side wall and a line normal to the cooking surface is between 2 and 10 degrees, the same as Angle A, and that a pan featuring this angle will inherently perform the

---

published in September 1997, and is a printed publication under 35 U.S.C. § 102(b).  (Defs.' Mem. 6 n.2.)

functions claimed in the '174 Patent.  (Defs.' Mem. 21-22.)  As an initial matter, then, the Court

must determine whether Defendants' measurements of the figures in the '157 reference were

appropriate.  The Court finds that they were not.

The law is clear that precise measurements should not be made, and should not be

considered by a court, where the drawings and figures from which those measurements are

derived are silent as to scale and proportion.  *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1149

(Fed. Cir. 2005) ("'Absent any written description in the specification of quantitative values,

arguments based on measurements of a drawing are of little value.'" (quoting *In re Wright*, 569

F.2d 1124, 1127 (C.C.P.A. 1977)); *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l Inc.*, 222 F.3d

951, 956 (Fed. Cir. 2000) ("[I]t is well established that patent drawings do not define the precise

proportions of the elements and may not be relied on to show particular sizes if the specification

is completely silent on the issue."); *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp.

2d 366, 374 n.9 (D. Del. 2005) (rejecting defendant's argument that foreign patent drawing

disclosed certain claim limitations, because to do so would "require making precise

measurements without a special indication that such measurements were part of the invention").

*Nystrom* is particularly instructive here.  In that case, which involved curved flooring

boards, the district court found certain patent claims invalid as anticipated by a prior art

reference.  *See Nystrom*, 424 F.3d at 1148.  Specifically, the district court, instead of applying

the Federal Circuit's holdings in *In re Wright* and *Hockerson-Halberstadt* – which it found

inapplicable – inquired as to whether a person of ordinary skill in the art would use

measurements from the prior art reference to determine the proper degree of board curvature,

and answered that question in the affirmative.  *See id.*  The Federal Circuit reversed, holding that

the district court erred in ignoring "[the Federal Circuit's] disfavor in reading precise proportions

into patent drawings which do not expressly provide such proportions." *Id.* at 1149.  Here, as in

*Nystrom*, Defendants ask the Court to ignore Federal Circuit precedent and allow precise

measurements to be applied to the '157 reference.  Defendants attempt to distinguish *Nystrom*,

noting that there, the defendant's measurements were not directly based on the prior art figures

themselves, but rather were based on computer simulations of those figures.  (Defs.' Mem. 19-

20.)  However, as Plaintiffs note (Pls.' Mem. 15 n.7), the Federal Circuit was less concerned

with the use of a computer model than it was that the model was "premised on unstated

assumptions in prior art patent drawings." *Nystrom*, 424 F.3d at 1149.[17]  Similarly, the drawings

---

[17] Defendants assert that Plaintiffs should be judicially estopped from arguing that measurements of patent figures lacking in information on scale or proportion are legally impermissible, because Plaintiffs overcame the Adams prior art – which did not disclose specific dimensions or proportions – by employing such measurements.  (Defs.' Mem. 17-19.) Defendants cite *New Hampshire v. Maine*, 532 U.S. 742 (2001), which lays out certain factors to be considered by a court when determining whether to invoke judicial estoppel.  Although "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle . . . several factors typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750 (alteration, citations, and internal quotation marks omitted).  These factors include: (1) whether a party's later position is "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert [the] inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (internal quotation marks omitted).

Defendants contend that "[t]he only way that Mr. Cacace could have distinguished Adams . . . was to calculate the 45-degree angle using the figures set forth in the patent" (Defs.' Mem. 18), which is exactly what Plaintiffs now claim Defendants may not do.  Indeed, in response to the initial PTO rejection of Plaintiffs' patent application, which referenced angle measures in the Adams prior art (where no angle measures were actually indicated), Plaintiffs responded to the PTO by re-emphasizing the angle limitation in their own patent, which was not disclosed by the Adams prior art, and by estimating the angle measure of the corresponding element in the Adams prior art, which Cacace found to be "about 45 degrees."  (J.A. 60; Pls.' Mem. 18.)  *See Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997) (citing cases approving application of judicial estoppel where prior statements were made in administrative or quasi-judicial proceedings).  It may very well have been improper for both the PTO and Plaintiffs to rely on angle measurements to distinguish the Adams prior art.  However, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*,

in the '157 reference contain no indicia that they are drawn to scale, nor is there any language in the specification relating to size or angle measurements.[18]  (Sanborn Decl. Ex. 4.)  Therefore, following the precedent of the Federal Circuit, the Court will not consider any measurements obtained based on these figures in determining whether the '174 Patent is invalid as anticipated by prior art.  Accordingly, the Court finds that the '157 reference does not disclose Angle A of the '174 Patent.  Because the '157 reference does not contain each element of Claim 1 of the '174 Patent, it does not anticipate the '174 Patent.  Therefore, Defendants' motion for summary judgment on the basis of the patent's invalidity is denied.[19]

---

532 U.S. at 750 (internal quotation marks omitted).  Here, invoking judicial estoppel would lead to an absurd result, as the Court would effectively bar itself from applying Federal Circuit precedent, which is binding upon it here.  The Court, therefore, declines to invoke judicial estoppel.

[18] Compare this to the '174 Patent, which expressly includes the angle measurement in drawings in the specification.  (J.A. 1.)

[19] Because it is only necessary for the Court to find that one claim limitation of the '174 Patent is not disclosed by the '157 reference in order to find that the '174 Patent was not anticipated, *see Zenith*, 522 F.3d at 1363, the Court need not, nor will it, discuss other claim limitations (Claims 7-9) that Defendants assert are anticipated by the '157 reference.  However, Claim 1, which contains the Angle A limitation, is independent, and Claims 7-9 are dependent on Claim 1.  Therefore, because Defendants cannot demonstrate that the '157 reference contains each limitation of Claim 1 – namely, the Angle A limitation – and because dependent claims contain all of the limitations of the related independent claim, Defendants also fail to demonstrate that the '157 reference contains each limitation of Claims 7-9.

### III.  Conclusion

For the foregoing reasons, the Court construes the disputed claim terms as described in this Opinion.  Defendants' motion for summary judgment is denied.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Dkt. No. 103).

SO ORDERED.

Dated:          White Plains, New York
                September 13, 2011

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List (by ECF):

David James Galluzo, Esq.
Peter Jonathan Toren, Esq.
Lawrence Bennett Goodwin, Esq.
Steven D. Chin, Esq.
Charlotte Ann Pontillo, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, New York NY 10019
(212) 506-1700
Fax: (212) 506-1800
Email: dgalluzo@kasowitz.com
Email: ptoren@kasowitz.com
Email: lgoodwin@kasowitz.com
Email: schin@kasowitz.com
Email: cpontillo@kasowitz.com
*Counsel for Plaintiffs*

Eric Jon Rotbard, Esq.
81 Main Street, Suite 205
White Plains, NY 10601
(914) 422-2500
Fax: (914) 683-1279
Email: erotbard@rotbardlaw.com
*Counsel for Plaintiffs*

Joshua C. Krumholz, Esq.
Peter Sanborn, Esq.
Christelette Angelika Hoey, Esq.
Harmony Iris Loube, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
Fax: (617) 523-6850
31 West 52nd Street
New York, NY 10019
(212) 513-3200
Fax: (212) 385-9010
Email: joshua.krumholz@hklaw.com
Email: peter.sanborn@hklaw.com
Email: christelette.hoey@hklaw.com
Email: harmony.loube@hklaw.com
*Counsel for Defendants*